J-S21026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEARL DWAYNE SMALLEY | : | |
| | : | |
| Appellant | : | No. 953 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 13, 2025
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000107-2023

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                          **FILED JULY 08, 2026**

Appellant, Dearl Dwayne Smalley, appeals from the judgment of sentence entered on May 13, 2025.  On this direct appeal, Appellant's counsel filed a petition for leave to withdraw and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw. Moreover, after independently reviewing the record, we conclude that the appeal is wholly frivolous.  We, therefore, grant counsel's petition to withdraw and affirm the judgment of sentence.

Appellant was arrested and charged with possessing a controlled substance and multiple counts of driving under the influence of a controlled substance ("DUI").  The case proceeded to a jury trial, where the following evidence was presented.

Pennsylvania State Police Trooper Connor Graber testified that, on November 3, 2022, he was in a marked patrol car and dressed in full uniform, when a white pickup truck passed his location and turned into a McDonald's parking lot. N.T. Trial, 2/26/25, at 38. Trooper Graber testified that he typed the license plate of the white pickup truck into his mobile desktop terminal, learned that the vehicle was registered to Appellant, and discovered that Appellant's driver's license was suspended. *Id.* at 38-39. As Trooper Graber testified, he pulled up next to the white pickup truck, visually identified the driver as Appellant, and initiated a traffic stop of Appellant's vehicle. *Id.* at 39. The trooper testified:[1]

> While I was speaking to [Appellant] I noticed he is fidgety. Like it's noon, around 12:45. His eyes are extremely glassy and bloodshot.
>
> His appearance to me, based on my training and experience, is extremely disheveled. His lip is [] bleeding. It's, like, very chapped. It's bloody. He has pock marks on his arms and his face, which are typically from someone that has been using controlled substances in the past.
>
> Sometimes control[led] substances make you itch your skin where they actually eat at your own skin. So [] I'm just verifying, looking at his eyes and trying to check his pupil size, which is kind of difficult because you can see [in the video recording of the incident,] there is no clouds in the sky, it is daylight. And I have him look up at the sky to check his

---

[1] The jury was shown Trooper Graber's Mobile Video Recording of the traffic stop. *See* Commonwealth's Exhibit 1. Occasionally, the Commonwealth paused the video and Trooper Graber explained his view of what was transpiring in the video.

nasal cavity to see if there is any residue of any narcotics in there.

. . .

Something doesn't seem right to me, and [I was] verifying and looking at what those clues are for me.

*Id.* at 43-44.

Trooper Graber subjected Appellant to numerous field sobriety tests. The trooper testified that, during the tests, Appellant could not follow the trooper's directions. *Id.* at 45. For example, the trooper testified:

It's pretty simple. I explained [to Appellant,] follow the tip of my pen with your eyes and your eyes only, don't move your head. I could understand if someone was nervous and they move their head, but I had to consistently tell him, and I [had] to repeat myself multiple times.

*Id.*

Moreover, the trooper subjected Appellant to a Modified Rhomberg Test. Trooper Graber testified:

This test is designed to judge their time estimate. So he is counting to 30 in his head. He should be, based on the training, within five seconds, either 25 or 35.

While administering this test I'm looking at how he acts or his body acts in that fixed position, and [in the video of the traffic stop,] you will see [Appellant's] body swaying back and forth because he can't keep his balance straight, and I'm looking up his nasal cavity again to see is there anything in his nostrils . . . and then I'm also looking at his eyelids to see if those are trembling again. Because a lot of people that are under the influence of methamphetamine or marijuana, when they look up at the sky their eyelids will like pulsate, and . . . that's what I saw, that his eyelids were trembling.

*Id.* at 47-48.

Trooper Graber testified that, at this point, he believed Appellant was under the influence of a controlled substance. *Id.* at 48. The trooper placed Appellant under arrest and, during the search incident to arrest, the trooper discovered "a small glassine bag, which had, based on my training and experience, what I believed to be LSD." *Id.* at 49. Trooper Graber testified that he read Appellant his *Miranda*[2] rights and, after Appellant agreed to speak to the trooper, Appellant admitted that the substance inside the bag was, in fact, LSD. *Id.*

The trooper applied for and received a search warrant for Appellant's blood. *Id.* at 55-59. He then transported Appellant to the Fulton County Medical Center, where Appellant's blood was drawn for chemical testing. *Id.* at 59-60. Michael Lamb, a forensic toxicologist for NMS Labs, testified that his lab performed the drug screen on Appellant's blood samples. *See id.* at 136. Mr. Lamb testified that chemical testing of Appellant's blood sample revealed the presence of: amphetamine (detected at a level of 310 nanograms per milliliter of blood);[3] methamphetamine (detected at a level of

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Mr. Lamb testified:

> So, when methamphetamine is taken into the body, it will be metabolized or broken down to amphetamine.
>
> So we can see – so we commonly see amphetamine present in cases that also have methamphetamine. It's an expected drug

*(Footnote Continued Next Page)*

1,800 nanograms per milliliter of blood); and, MDA (detected at a level of 13 nanograms per milliliter of blood).[4]  *Id.* at 141-142.

The jury found Appellant guilty of possessing a controlled substance and four counts of DUI.[5]  On May 13, 2025, the trial court sentenced Appellant to serve 12 to 60 months in prison, with a concurrent term of 12 months of probation, for his convictions.  Appellant filed a timely notice of appeal. Further, on appeal, Appellant's counsel filed a petition for leave to withdraw and an *Anders* brief.

Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural

---

> metabolite finding.  However, it's important to note that amphetamine may also be a drug that is used in its own right.
>
> Amphetamine is the active ingredient in some prescription[] medications like Adderall or other medications used for ADHD.

N.T. Trial, 2/26/25, at 144.

[4] Mr. Lamb testified:

> MDA[,] or methylenedioxyamphetamine[,] . . . is an amphetamine-type drug; however, it differs . . . from methamphetamine in a way that individuals may consume it believing it to be ecstasy or Molly or another drug like that.  So it's a stimulant drug that also has hallucinogenic properties.

N.T. Trial, 2/26/25, at 147.

[5]  35 P.S. § 780-113(a)(16) and 75 Pa.C.S.A. §§ 3802(d)(1)(ii), 3802(d)(1)(iii), 3802(d)(1)(iii), and 3802(d)(2), respectively.

- 5 -

requirements for withdrawing as counsel. ***Commonwealth v. Miller***, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under ***Anders***, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." ***Miller***, 715 A.2d at 1207. Second, counsel must file an ***Anders*** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Finally, counsel must furnish a copy of the ***Anders*** brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." ***Commonwealth v. Woods***, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5; ***see also Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en*

*banc*) (holding that the **Anders** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. . . . [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claims raised in the **Anders** brief:

> 1. Whether the evidence presented at trial was insufficient as a matter of law to sustain [Appellant's] conviction for [DUI] pursuant to 75 [Pa.C.S.A.] § 3802(d)(1) because the evidence failed to establish [Appellant's] guilt beyond a reasonable doubt?
>
> 2. Whether the evidence presented at trial was insufficient as a matter of law to sustain [Appellant's] conviction for possession of a controlled substance pursuant to 35 P.S. § 780-113(a)(16) because the evidence failed to establish [Appellant's] guilt beyond a reasonable doubt[?]

Appellant's Brief at 7-8 (some capitalization omitted).

Appellant's claims on appeal challenge the sufficiency of the Commonwealth's evidence. We review Appellant's sufficiency challenges under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

First, Appellant claims that the evidence was insufficient to support his DUI convictions under 75 Pa.C.S.A. § 3802(d)(1). Appellant was convicted of three violations of Section 3802(d)(1): one count of violating Section

3802(d)(1)(ii) and two counts of violating Section 3802(d)(1)(iii).[6]  Section

3802(d)(1) declares:

> (d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (1) There is in the individual's blood any amount of a:
> >
> > > (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act [("CSA")];
> > >
> > > (ii) Schedule II or Schedule III controlled substance, as defined in The [CSA], which has not been medically prescribed for the individual; or
> > >
> > > (iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1).

We have held:

> As our Supreme Court has observed, "subsection 3802(d)(1) prohibits one from driving if there is **any** amount of a Schedule I controlled substance, **any** amount of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or **any** amount of a metabolite of a controlled substance in one's blood." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011).  Thus, for the Commonwealth to meet its burden of proof under subsection 3802(d)(1), it need only prove: (1) that the defendant was in actual physical control or operated the motor vehicle; and (2) that he or she had a Schedule I, II, or III controlled substance or a metabolite of a controlled

---

[6] Appellant was also convicted of violating 75 Pa.C.S.A. § 3802(d)(2). Appellant, however, does not challenge his Section 3802(d)(2) conviction on appeal.  **See** Appellant's Brief at 7-8; **see also** Appellant's Rule 1925(b) Statement, 8/5/25, at 1..

substance in his or her blood. There is no requirement under subsection 3802(d)(1) that the Commonwealth establish the defendant was impaired while driving.

***Commonwealth v. Macik***, 319 A.3d 529, 534 (Pa. Super. 2024) (some citations omitted) (emphasis in original). Further, "section 3802(d)(1) is a strict liability statute," which contains "no *mens rea* element." ***Id.*** at 536.

Here, the Commonwealth proved that Appellant was operating a vehicle while methamphetamine was present in his blood. ***See*** N.T. 2/26/25, at 141-142. As methamphetamine is a Schedule II controlled substance, the Commonwealth's evidence was sufficient to prove that Appellant violated 75 Pa.C.S.A. § 3802(d)(1)(ii). ***See*** 35 P.S. § 780-104(2)(iii). Moreover, the Commonwealth proved that Appellant was operating a vehicle while amphetamine and MDA were in his blood. Michael Lamb testified that amphetamine is a metabolite for methamphetamine (a Schedule II controlled substance) and the jury was instructed that MDA is a metabolite for MDMA (a Schedule I controlled substance). ***See*** N.T. Trial, 2/26/25, at 141-142 and 247; ***see also*** 35 P.S. § 780-104(1)(iii)(26). Thus, the Commonwealth's evidence was sufficient to support Appellant's convictions for violating 75 Pa.C.S.A. § 3802(d)(1)(iii).

We therefore conclude that the Commonwealth's evidence was sufficient to support Appellant's convictions for violating 75 Pa.C.S.A. § 3802(d)(1).[7] Appellant's claim to the contrary is frivolous.

Next, Appellant claims that the evidence was insufficient to support his conviction for possessing a controlled substance. *See* Appellant's Brief at 8-12. This claim is, however, frivolous because Appellant was found in possession of LSD and Appellant confessed that the substance in his possession was, in fact, LSD. *See* N.T. Trial, 2/26/25, at 49; *see also*

---

[7] 75 Pa.C.S.A. § 3802(d)(1)(ii) forbids a defendant from operating a vehicle while there is any amount of a Schedule II or Schedule III controlled substance "which has not been medically prescribed for the individual." 75 Pa.C.S.A. § 3802(d)(1)(ii); *see also Commonwealth v. Glenn*, 233 A.3d 842, 846 (Pa. Super. 2020) ("the language of subsection 3802(d)(1)(iii) must be read in conjunction with the remainder of the statute, including the language in subsection 3802(d)(1)(ii), which provides an exception when the Schedule II or III controlled substance is medically prescribed"). On appeal, Appellant does not argue that the Commonwealth failed to prove the Schedule II controlled substance found in his blood was not "medically prescribed." Nevertheless, we note that, in *Commonwealth v. Sojourner*, 408 A.2d 1108 (Pa. Super. 1979), this Court addressed a similar claim lodged under the CSA. Importantly, we held that, before the Commonwealth was required to disprove that a defendant was authorized to possess narcotics, the defendant needed to come forward with credible evidence of authorization. *Id.* at 1114-1115; *see also Commonwealth v. Parrott*, 429 A.2d 731 (Pa. Super. 1981) (same); *Commonwealth v. James*, 46 A.3d 776, 780 (Pa. Super. 2012) ("before the prosecution must disprove the accused was authorized to possess narcotics under the [CSA], the accused must establish some **credible** evidence of such authorization") (emphasis in original). Under this precedent, Appellant was required to come forward with some proof that he possessed a prescription for the Schedule II controlled substance found in his blood before the Commonwealth was required to disprove his authorization to possess the drug. As Appellant did not satisfy this burden of production, any sufficiency claim based upon this statutory element would have been frivolous.

*Commonwealth v. Stasiak*, 451 A.2d 520, 525 (Pa. Super. 1982) ("the existence of narcotic drugs does not have to be proven by chemical analysis and may be proven either by direct or circumstantial evidence") (quotation marks and citations omitted).

We have considered the issues raised within Appellant's brief and have determined that the claims are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 07/08/2026